**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WELLS FARGO FINANCIAL, INC., successor to Norwest Financial Illinois, Inc., | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | )     No. 05 C 4192 |
| | ) |
| DAVID DAUM, CAROL C. DAUM, and EARL W. GSWELL & CO., | ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

This is a mortgage foreclosure action brought by Wells Fargo Financial, Inc. ("Wells Fargo"). The principal defense of pro se defendants David Daum and Carol Daum is that they entered into an oral settlement agreement with Wells Fargo that released them from the mortgage. Earlier this year, after requesting briefs on the issue, we ruled that because under Illinois law an agreement to release a mortgage does not have to be in writing in order to be enforceable, defendants are permitted as a matter of law to raise the oral agreement as an affirmative defense.

Wells Fargo has now filed a motion for summary judgment.[1] Pursuant to the briefing schedule set by the court, the Daums'

---

[1]    Wells Fargo filed and served the Daums with a "Notice to Pro Se Litigants Opposing Motion for Summary Judgment" as required by N.D. Ill. Local Rule 56.2.

response to the motion was due on July 6, 2007.  On July 9, 2007, David Daum sent a letter to the court stating that he would be filing his materials five days late, on July 11, 2007.  Mr. Daum indicated that he intended to file his letter on the court docket, as well as a motion for an extension of time to file a response, a response, a statement of material facts, a cross-motion for summary judgment, a motion to strike, and a motion for entry of an "order regarding mortgage lien amount and for limited appointment of settlement assistance counsel."  It is now two months later, and since the July 9 letter, the court has received no further communication from the Daums, and they have failed to file anything with the court.  Therefore, we will proceed to decide Wells Fargo's motion without a response from the Daums.

## DISCUSSION

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party.  See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999).  Summary judgment should be denied if the dispute is 'genuine': 'if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" <u>Talanda v. KFC Nat'l Mgmt. Co.</u>, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).

Once the moving party has supported its motion for summary judgment, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Any fact asserted in the movant's affidavit will be accepted by the court as true unless the adverse party submits its own affidavits or other evidence contradicting the assertion. <u>Curtis v. Bembenek</u>, 48 F.3d 281, 287 (7th Cir. 1995). If the adverse party does not respond with evidence complying with Rule 56, "summary judgment, if appropriate, shall be entered against the adverse party." Fed. R. Civ. P. 56(e).

A pro se plaintiff is entitled to have his pleadings construed liberally. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). Such plaintiffs are also entitled to a certain amount of latitude with respect to the technical rigors of summary judgment. <u>Kincaid v.</u>

<u>Vail</u>, 969 F.2d 594, 598 (7th Cir. 1992). However, where a pro se plaintiff has not pointed to anything beyond conclusory statements in the pleadings which would indicate the existence of a triable issue of fact, he has failed to meet his burden under Rule 56. <u>See</u> <u>Timms v. Frank</u>, 953 F.2d 281, 285 (7th Cir. 1992) (holding that all pro se litigants are entitled to notice of the requirements of Rule 56 because failure to point to evidence beyond the complaint will result in summary judgment being entered against them).

Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Rule 56 must serve and file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. Local R. 56.1(a)(3). Further, Local Rule 56.1(b)(3)(B) requires that the non-moving party file a reply containing "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." The reply must also include "any additional facts that require the denial of summary judgment," with appropriate references to the record. N.D. Ill. Local R. 56.1(b)(3)(C). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the

statement of the opposing party." Id.  See generally Koszola v. Board of Educ., 385 F.3d 1104, 1108 (7th Cir. 2004).

In considering a motion for summary judgment, a court need not assume the truth of a nonmovant's conclusory allegations on faith or scour the record to unearth material factual disputes.  Carter v. Am. Oil Co., 139 F.3d 1158, 1163 (7th Cir. 1998).  "Ultimately, the court must decide 'whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict.'"  Ostergren v. Village of Oak Lawn, 125 F. Supp. 2d 312, 319 (N.D. Ill. 2000)(quoting Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1573 (7th Cir. 1989)).

## A.   **Wells Fargo's Complaint**

The relevant facts, which we deem admitted because they are not controverted by the Daums, are as follows.  The Daums own the property commonly known as 41 Pierce Road in Highland Park, Illinois (the "Pierce Road Property").  In 1999, the Daums were experiencing financial problems and sought to consolidate existing debt by taking out a new mortgage loan.  The Daums had an existing mortgage loan with Norwest Financial Illinois, Inc. ("Norwest"), and they were contacted by a Norwest representative to arrange for a debt consolidation loan.

On December 29, 1999, the Daums executed and delivered to Norwest a Note in the amount of $436,372.58 as well as a Mortgage on the Pierce Road Property in order to secure the Note.  The

proceeds of the mortgage loan with Norwest were used to pay off several of the Daums' preexisting debts. The Mortgage was recorded by the Lake County, Illinois Recorder of Deeds on January 6, 2000.

The Note discloses the finance charges associated with the transaction and other disclosures required by the Truth in Lending Act and provides that the Daums grant Norwest a security interest in their property. The Note and the Mortgage require the Daums to make monthly payments on the debt to Norwest until paid in full. Wells Fargo became the successor in interest to Norwest.

In July 2001, the Daums stopped making their monthly mortgage payments and real estate tax payments, and they have not made any such payments since then. Due to the Daums' default, Wells Fargo accelerated the mortgage loan and filed a foreclosure action in state court. The Daums raised various affirmative defenses, a number of which are identical to those raised in the instant action.

There were extensive settlement discussions between Wells Fargo and the Daums. Wells Fargo maintains that it never agreed to a settlement with the Daums, but the Daums assert that an agreement was reached. In any event, Wells Fargo dismissed the state-court foreclosure action in February 2005,[2] but then filed the instant foreclosure action about five months later, in July 2005. The

---

[2] The dismissal order stated that the court made "no finding as to whether the parties reached a binding settlement agreement during the pendency" of the case. (Pl.'s R. 56.1 Statement, Ex. 7.)

total amount due and owing under the Mortgage and Note, according
to Wells Fargo, is $457,266.99 (not including attorney's fees and
costs).

After reviewing the evidence, we have concluded that a triable
issue of fact does not exist with respect to Wells Fargo's claim
for foreclosure.  The Daums admit that they are in default but have
asserted four defenses, only two of which merit discussion.[3]  The
first is that Wells Fargo is estopped from pursuing this
foreclosure because the parties entered into a settlement agreement
in the state-court foreclosure action.  The only evidence of such
an agreement is Mr. Daum's conclusory assertion at his deposition
that an agreement was entered into--an assertion made despite the
fact that Mr. Daum was not directly involved in the negotiations
between counsel for the parties.  The Daums rely on a March 1, 2004
letter from their attorney, Sheryl E. Fuhr, to counsel for Wells
Fargo that outlines the terms and conditions that the Daums
"propose[d]."  In closing, the letter states: "If the terms and
conditions of our settlement _offer_ are acceptable, please return a
counterpart signed by your clients to my office."  (Pl.'s R. 56.1
Statement, Ex. 2, Tr. of Dep. of David Daum, Ex. 6 (emphasis
added).)

The letter is not evidence of a settlement agreement.  Rather,
it is clearly a letter containing a settlement offer.  It was not

---

[3]/  The other two affirmative defenses have been mooted.

signed by Wells Fargo, and Wells Fargo states that it never signed
the letter or entered into a settlement agreement.  All that the
Daums have to offer in regard to an alleged settlement agreement is
Mr. Daum's conclusory assertion that an agreement existed, which
without more is insufficient to create a genuine issue of fact.

The second primary defense raised by the Daums relates to the
language of the Mortgage.  Mr. Daum contended at his deposition
that the Mortgage contains a provision that limits Wells Fargo's
secured interest in the Pierce Road Property to $200,000 and that
Wells Fargo is thus limited to a judgment not exceeding that
amount.

The Mortgage provides that the principal amount of the loan is
$436,372.58 and states in pertinent part:

> The Mortgagors, David Daum and Carol C. Daum, . . .
> mortgage and warrant to Norwest Financial Illinois, Inc.,
> Mortgagee, the following described real estate situated
> in the County of Lake, State of Illinois, to wit:
> [the Pierce Road Property, a description of which is
> attached to the Mortgage]
> to secure the repayment of a promissory note of even
> date, payable to Mortgagee in monthly installments, the
> last payment to fall due on January 4, 2030, and also to
> secure the repayment of any and all future advances and
> sums of money which may from time to time hereafter be
> advanced or loaned to Mortgagors by Mortgagee; provided
> however, that the principal amount of the outstanding
> indebtedness owing to Mortgagee by Mortgagors at any one
> time shall not exceed the sum of $200,000.00.

(Pl.'s R. 56.1 Statement, Ex. 2, Tr. of Dep. of David Daum, Ex. 1,

Mortgage.)

Contract interpretation, where a contract is unambiguous, is a matter of law that is particularly suited to disposition by summary judgment.  <u>United States v. 4500 Audek Model No. 5601 AM/FM Clock Radios</u>, 220 F.3d 539, 542-43 (7th Cir. 2000).  Here, the Mortgage is unambiguous, and the Daums' reading of it is simply incorrect.  The Mortgage expressly provides that the Daums mortgaged to Norwest (now Wells Fargo) the Pierce Road Property "to secure the repayment of a promissory note of even date, payable to [Wells Fargo] in monthly installments, the last payment to fall due on January 4, 2030."  That is the main purpose of the Mortgage: to secure the $436,372.58 Note, the amount of which is reflected in the Mortgage.  The secondary purpose of the Mortgage is contained in the next clause--"and also to secure the repayment of any and all future advances and sums of money which may from time to time hereafter be advanced or loaned to [the Daums] by Mortgagee; provided however, that the principal amount of the outstanding indebtedness owing to Mortgagee by Mortgagors at any one time shall not exceed the sum of $200,000.00."  In other words, the Mortgage would also secure future advances or loans to the Daums from the Mortgagee, but those future advances would not occur unless the Daums' outstanding indebtedness was $200,000 or less.

The phrase regarding the $200,000 figure does not modify or qualify the first portion of the pertinent language, which is the provision that the mortgage secures the repayment of the

contemporaneous promissory note. The language of the Mortgage clearly provides that the Note is fully secured. It also provides that a "default hereunder or under the terms of the above described Note, at Mortgagee's option, without notice or demand, shall render the entire unpaid balance of said note at once due and payable (including any unpaid Interest)." The Daums are in default and have been in default for years, and the entire unpaid balance of the Note is therefore due and payable according to the terms of the Mortgage. Wells Fargo's motion for summary judgment will be granted as to its claim for foreclosure.

Wells Fargo's separately-filed motions for judgment of foreclosure and to appoint a special commissioner will also be granted.

**B.    The Daums' Counterclaims**

Wells Fargo also moves for summary judgment on the three counterclaims asserted by the Daums. The first counterclaim alleges that Norwest failed to comply with the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 <u>et seq.</u>, by inaccurately describing the "prepaid finance charge and the "amount financed" and "adding on the Note Plaintiff prepared for execution by Defendants material provisions such as the Demand Option without prior disclosure or adequate disclosure." (Answer at 11.) At Mr. Daum's deposition, when he was asked to elaborate on the legal basis for this claim, Mr. Daum indicated that Norwest should have used the "amount

financed," $405,826.50, to calculate the 7 percent prepaid finance charge (points) and not the principal loan amount. Mr. Daum also contended that the amount financed was inaccurately described and that he was not adequately notified of the Demand Option provision. (Pl.'s R. 56.1 Statement, Ex. 2, Tr. of Dep. of David Daum, at 59-71.) However, Mr. Daum has provided no evidence of his factual contentions, and furthermore no legal basis for his contentions that such alleged errors or nondisclosures constitute a violation of TILA. The Daums have failed to show a material factual dispute as to their first counterclaim.

The second counterclaim alleges that Norwest set forth the "prepaid finance charge" and the "amount financed" on the statutorily-required HUD-1 Settlement Statement in amounts not previously disclosed to the Daums and therefore violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq. Mr. Daum explained at his deposition that the theory behind this claim is that the alleged miscalculation of points, as described supra, violated RESPA because it was tantamount to a misrepresentation on the Settlement Statement. Wells Fargo maintains that it is entitled to judgment on this claim because there is neither an express nor an implied private right of action under RESPA for violations of its disclosure provisions. We agree. See, e.g., Robinson v. Fountainhead Title Group Corp., 447 F. Supp. 2d 478, 492 (D. Md. 2006); Reese v. 1st Metro. Mortgage Co., No.

Civ. A. 03-2185-KHV, 2003 WL 22454658, at *3-4 (D. Kan. Oct. 28, 2003).

The third counterclaim alleges that Norwest violated the Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1639, by failing to provide the Daums with "certain required pre-closing disclosure requirements and including prohibited provisions such as a Demand Option." (Answer at 12.) Wells Fargo argues that there is no HOEPA violation because the loan did not qualify for HOEPA treatment.

HOEPA requires lenders to make additional disclosures to borrowers with "high-cost" or "high-rate" loans. See 15 U.S.C. § 1639. A high-cost HOEPA loan is "a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction . . . if . . . the total points and fees payable by the consumer at or before closing will exceed the greater of . . . 8 percent of the total loan amount; or . . . $400." 15 U.S.C. § 1602(aa)(1). The term "points and fees" under HOEPA includes broker fees, all items included in the finance charge, and other fees listed in 15 U.S.C. § 1605(e), such as title insurance fees and appraisal fees. Id. § 1602(aa)(4). Here, the prepaid finance charge was $30,546.08, the appraisal fee was $275.00, and the title insurance fee was $790.00. These figures total $31,611.08, which falls short of the 8 percent of the total

loan amount (8 percent of $436,372.58, or $34,909.81) required to trigger HOEPA disclosures. Therefore, the HOEPA claim fails.

The Daums have failed to demonstrate that a genuine issue of material fact exists with regard to their three counterclaims. Accordingly, Wells Fargo's motion for summary judgment will be granted as to defendants' counterclaims.

## CONCLUSION

Plaintiff's motion for summary judgment [53] is granted. Plaintiff's motion for judgment of foreclosure [58] is granted. Plaintiff's motion to appoint a special commissioner [59] is granted, and Robert Zaideman is appointed special commissioner.


DATE:          September 10, 2007


ENTER:        _____
              John F. Grady, United States District Judge